**UNITED STATES of America, Plaintiff,**

v.

**Mark John HAGGERTY, et al., Defendants.**

**No. CR89–315R.**

United States District Court, W.D. Washington, at Seattle.

March 21, 1990.

**416**

Robert G. Chadwell, Denver, Colo., for the U.S.

Kevin A. Peck, Seattle, Wash., for Carlos Garza.

Michael Davidson, Ken U. Benjamin, Morgan J. Frankel, Claire M. Sylvia, Steven R. Ross, Charles Tiefer, Office of the Clerk, U.S. House of Representatives, Washington, D.C., for amici curiae.

Charles S. Hamilton III, Seattle, Wash., for Colin Stone, Danus Allen Strong.

Colin C. Kippen, Seattle, Wash., for Jane Doe, Jennifer Campbell.

Robert Gombiner, Seattle, Wash., William Kunstler, Ronald Kuby, David Cole, Center for Constitutional Rights, New York City, for Mark John Haggerty, Adea Xould.

**AMENDED MEMORANDUM DECISION DISMISSING COUNT II OF THE INFORMATION BASED ON UNCONSTITUTIONALITY OF FLAG PROTECTION ACT**

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on a joint motion by defendants Mark Haggerty, Jennifer Campbell, Darius Strong and Carlos Garza to dismiss Count II of the information against them. Having reviewed the motion together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

For purposes of this motion, the facts are undisputed.[1] Early on the morning of October 28, 1989, defendants burned a United States flag belonging to the United States Postal Service. The flagburning occurred during a political demonstration convened in front of a post office in Seattle, Washington to protest the enactment of the Flag Protection Act of 1989, 18 U.S.C. § 700. That statute, which prohibits flagburning, had taken effect only minutes before defendants' actions against the flag.

Defendants were charged with committing two misdemeanors: one count of wilful injury to federal property contrary to 18 U.S.C. §§ 1361 and 1362, and one count of knowingly burning a United States flag in violation of the Flag Protection Act. Defendants now move to dismiss the flagburning charge on the grounds that the statute forbidding that activity is unconstitutional under the First Amendment to the United States Constitution both on its face and as applied to their conduct. The court will consider the latter argument first.

## II. LEGAL ARGUMENT

The Flag Protection Act of 1989 provides that "[w]hoever knowingly mutilates, defaces, physically defiles, burns, maintains on the floor or ground, or tramples upon any flag of the United States shall be fined

---

1. Defendants have reserved the right to a jury trial if the instant motion is not granted. They have also moved to dismiss the information on grounds of outrageous government conduct.

under this title or imprisoned for not more than one year, or both." 18 U.S.C. § 700(a)(1). However, the statute "does not prohibit any conduct consisting of the disposal of a flag when it has become worn or soiled." 18 U.S.C. § 700(a)(2). A "flag of the United States" is defined as "any flag of the United States, or any part thereof, made of any substance, of any size, in a form that is commonly displayed." 18 U.S.C. § 700(b).

Defendants contend that, as applied to their flagburning activities, the Act is unconstitutional because it prohibits expressive conduct which is protected by the First Amendment. Defendants insist that this result is required by a very recent decision, *Texas v. Johnson,* —— U.S. ——, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), in which the United States Supreme Court struck down as unconstitutional a Texas statute forbidding the desecration of venerated objects including the United States flag.

*Texas v. Johnson* involved the criminal prosecution of Gregory Johnson for burning a United States flag on the steps of City Hall in Dallas, Texas during the 1984 Republican National Convention. The flagburning was the culmination of a demonstration protesting Reagan administration policies. Johnson was charged with violating a Texas law banning people from "defac[ing], damag[ing] or otherwise physically mistreat[ing] [a United States flag] in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action."

Johnson argued that the United States Supreme Court concluded that the Texas statute unconstitutionally infringed on expressive conduct protected under the First Amendment as applied to Johnson's flagburning. Defendants in the instant case contend that the same result must follow here.

The government acknowledges the relevance of the *Johnson* decision, but its response is curiously split. The court has received three briefs in opposition to defendants' motion: one from the Department of Justice, which reflects the position of the

executive branch; and two briefs from Congress, one from the United States House of Representatives and one from the United States Senate, which set forth the somewhat divergent views of the legislative branch.[2] While all three briefs argue that the Flag Protection Act is distinguishable from the law reviewed in *Johnson* and thus constitutional, they reach that end by differing and even conflicting means. This court will accordingly review the arguments in each brief separately.

### A. Expressive Conduct

■ The threshold question addressed by the *Johnson* Court in its analysis of the constitutionality of the Texas law as applied to Johnson's conduct was whether his burning of the flag constituted expressive conduct arguably protected by the First Amendment. 109 S.Ct. at 2538–40.

Although the First Amendment literally protects only freedom of "speech," the Supreme Court has long recognized that "expressive conduct," *i.e.,* conduct through which the actor intends to convey an idea, also falls within its ambit. *See, e.g., Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (display of a red flag in opposition to the government); *Brown v. Louisiana,* 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) (silent sit-in demonstration by blacks to protest segregation in a library); *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (students' wearing of black armbands to protest American military involvement in Vietnam); *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (attaching a peace sign to the flag). In all of these cases, the Supreme Court found that the conduct in question possessed sufficient communicative elements to implicate the First Amendment.

Based on this well-established precedent, the Court had no difficulty in finding that Johnson could invoke the First Amendment. His act of burning the flag was part of a political demonstration protesting the

---

**2.** The United States Senate and House of Representatives appear in this case as amici curiae.

renomination of Ronald Reagan as the Republican presidential candidate. As such, the Court concluded that the conduct was clearly intended to communicate a political message and that the message was apparent to the audience. *Johnson*, 109 S.Ct. at 2540.

Likewise, this court must determine if defendants' flagburning in this case was " 'sufficiently imbued with elements of communication ...' to implicate the First Amendment." *Id.* at 2539 (quoting *Spence, supra,* 418 U.S. at 409, 94 S.Ct. at 2729). No one disputes that their conduct took place during a political demonstration protesting the newly effective Flag Protection Act. Like the *Johnson* Court, this court readily concludes that "[t]he expressive, overtly political nature of [defendants'] conduct was both intentional and overwhelmingly apparent." 109 S.Ct. at 2540. Defendants' flagburning was unquestionably expressive conduct intended to convey a political message and thus implicates the First Amendment.[3]

### B. Governmental Interest

#### 1. Applicable Standard

■ If, as this court has found, defendants' conduct was expressive, the next step in the *Johnson* analysis is to determine whether the government's interest in regulating that conduct is related to the suppression of free expression. *Id.* at 2538. If it is not, the government need only justify defendants' prosecution under the less stringent standard set forth by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), for regulation of noncommunicative conduct. That standard requires the government to establish an important or substantial interest in regulating the nonexpressive element of the conduct.

If, on the other hand, the government's interest is related to the suppression of free expression, a more demanding standard is applicable. *Johnson*, 109 S.Ct. at 2538; *Spence*, 418 U.S. at 409–11, 94 S.Ct. at 2729–30. Under those circumstances, the court must subject the government's asserted interest to "the most exacting scrutiny." *Johnson*, 109 S.Ct. at 2543 (quoting *Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988)). In order to survive this strict scrutiny, the government must establish a compelling interest justifying the regulation of expressive conduct. *Boos* at 321, 108 S.Ct. at 1163.

#### 2. Government Interest in Texas v. Johnson

In *Johnson*, the State of Texas asserted an interest in prohibiting flag desecration to preserve the flag as a symbol of nationhood and national unity.[4] The Supreme Court held that this interest in protecting the symbolism of the flag was inextricably tied to the suppression of free expression. In reaching this conclusion, the Court harked back to its decision in *Spence*, 418 U.S. at 414, n. 8, 94 S.Ct. at 2732, n. 8, where it "acknowledged that the Government's interest in preserving the flag's special symbolic value 'is directly related to expression in the context of activity' such as affixing a peace symbol to a flag." *Johnson*, 109 S.Ct. at 2542. The *Johnson* Court continued:

> We are equally persuaded that this interest is related to expression in the case of Johnson's burning of the flag. The State, apparently, is concerned that such conduct will lead people to believe either that the flag does not stand for nationhood and national unity, but instead reflects other, less positive concepts, or that the concepts reflected in the flag do

**3.** A leaflet publicizing the demonstration urged people to participate in a "Festival of Defiance":

> On October 28th it becomes illegal to desecrate the flag. This fascist law is not an "exception" to the concept of free speech but an attack on political protest and dissent, and a precedent for the future. Blind patriotism must not be the law of the land. Unlike the flag-kissers, we will not whine, we will Rock and Roll in a Festival of Defiance.

Attachment to Exhibit 2, Affidavit of Jennifer Proctor Campbell in support of defendants' motions to dismiss the charges against them.

**4.** A second interest asserted by the State, preventing breaches of the peace, is not relevant here.

not in fact exist, that is, we do not enjoy unity as a Nation. These concerns blossom only when a person's treatment of the flag communicates some message. . . .

*Id.* Because the State's interest was related to the suppression of free expression, the Court concluded that the more lenient standard of review set forth in *O'Brien* was not pertinent.

Defendants in this case argue that the same reasoning and result apply here. Defendants assert that, although the superficial rationale for the legislation at issue is to protect the physical integrity of the flag, the only underlying governmental interest is the protection of the flag as a political symbol, and that this interest is, by definition, related to the suppression of expression because the government's interest in the flag as a symbol can only be threatened by an act communicating a message which undermines the flag's symbolic value. In other words, the danger against which the government wishes to protect the flag only arises from the communicative element of the prohibited conduct. Because the governmental interest underlying the Flag Protection Act is directly related to the suppression of expression, defendants argue that this court, like the Court in *Johnson*, must apply a standard of strict scrutiny in assessing the constitutionality of the legislation.

### 3. Department of Justice Position

The Department of Justice agrees with defendants that the Court's ruling in *Johnson* controls this court's decision on the applicable standard. Pursuant to *Johnson*, the Department of Justice concedes that the government's only conceivable interest in protecting the physical integrity of the flag is to promote its value as a political symbol, that this interest is inherently related to the suppression of free expression and that, therefore, legislation prohibiting

flagburning, including the law at issue here, is subject to strict scrutiny.[5]

### 4. United States Senate Position

The United States Senate agrees that the underlying purpose of the Flag Protection Act of 1989 is to protect the flag as a political symbol. But the Senate insists that *Johnson* is not dispositive of which standard of scrutiny to apply in this case because of significant differences between the Texas statute and the legislation at issue here.

As the Senate points out, a necessary element of an offense under the Texas law was knowledge that the conduct in question would "seriously offend one or more persons likely to observe or discover [the] action." The Texas law was, therefore, undeniably content-based. The existence of a violation depended entirely on the content and the probable communicative impact of the conduct. *Johnson,* 109 S.Ct. at 2543.

The Senate argues that the Flag Protection Act of 1989 is, by contrast, content-neutral in that it protects the physical integrity of the flag by proscribing certain destructive conduct regardless of the actor's intent to convey a message or the communicative impact on the audience. Based on its contention that the Act is content-neutral, the Senate reasons that the Act is not related to the suppression of expression and is accordingly reviewable under the more lenient *O'Brien* standard of scrutiny.

Unfortunately, the Senate's definition of what constitutes content-neutrality is incorrect, thus dooming its entire argument. The United States Supreme Court recently addressed this question in *Boos v. Barry,* 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). The Court stated that content-neutral restrictions on speech are "those that 'are *justified* without reference to the content of the regulated speech.'" *Id.* at 320,

---

**5.** The Department of Justice's position before this court echoes the testimony of the Department's representative during congressional hearings. In that testimony, William P. Barr, Assistant Attorney General for the office of Legal Counsel, maintained that given the expan-

sive nature of the Supreme Court's ruling in *Johnson* on the standard applicable to a flagburning law, Congress could not possibly draft a flag protection statute that would evade strict scrutiny.

108 S.Ct. at 1163. (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976) (emphasis added)). Thus, it is the *reason* for the legislation and not its *scope* which determines content-neutrality. If the justification for protecting the flag is related to the suppression of expression, it is not content-neutral even though the Act on its face is applicable to anyone who engages in certain conduct regardless of the actor's intent or the impact of the conduct.

*Johnson* succinctly addresses this point in the context of flag-burning legislation. As this court explained earlier, *Johnson* held that the governmental interest in preserving the flag's symbolic value under the Texas law was directly related to the suppression of free expression in the case of Johnson's burning of the flag. Since the Senate admits that the government's reason for enacting the Flag Protection Act of 1989 was exactly the same, *i.e.*, singling out the flag for protection as a political symbol, it must follow that the Act too is directly related to the suppression of expression in the case of the defendants before this court and cannot be considered content-neutral. Therefore, the less stringent *O'Brien* standard is inapplicable.

The Senate also argues that the interest which the government seeks to advance by protecting the flag from harm under the legislation at issue is not related to the *suppression* of expression. Instead, the Senate contends, Congress is pursuing the *affirmative* objective of preserving the flag as the embodiment of diverse views and not simply advancing its own view of the flag. This argument is without merit. Common sense dictates that pursuing the affirmative goal of preserving the flag because it represents a nation of diverse views inevitably results in suppressing the views of those who would express their opinion by destroying the flag. The *Johnson* decision itself uses the phrases "related to expression" and "related to the suppression of expression" interchangeably. *See, e.g.*, 109 S.Ct. at 2538, 2542. Whether the governmental interest is stated in affirmative terms or not, the fact remains that Congress is outlawing certain forms of expressive conduct under the Flag Protection Act.[6]

### 5. United States House of Representatives Position

Unlike the Department of Justice and the Senate, the United States House of Representatives does not agree with defendants that the government's sole interest in protecting the physical integrity of the flag arises out of its symbolic value. Instead the House argues that Congress enacted the Flag Protection Act because it wished to shield the flag from harm as an incident of sovereignty with a specific legal significance apart from its symbolic value. It is

---

**6.** The Senate also raises two other contentions which can be quickly dismissed. First, the Senate argues that the Flag Protection Act leaves open ample alternative channels for communication in that it does not prohibit protest against government policies in other ways, including many involving symbolic use of the flag. The argument that certain expressive conduct can be prohibited because other means of expression are available was rejected out of hand in *Spence*, 418 U.S. at 411 n. 4, 94 S.Ct. at 2731 n. 4 (1974). *See also Johnson*, 109 S.Ct. at 2546 n. 11.

Second, the Senate points to the passage in *Johnson* in which the Court noted that the Texas law was not aimed at protecting the physical integrity of the flag in all circumstances. *Id.* at 2543. In a footnote, the Court then referred to Justice Blackmun's dissent in *Smith v. Goguen*, 415 U.S. 566, 590–91, 94 S.Ct. 1242, 1255–56, 39 L.Ed.2d 605 (1974), in which he stated that he would have upheld defendant's conviction for sewing a flag on the seat of his pants because the lower court appeared to have construed the state statute in question so as to protect the physical integrity of the flag in all circumstances. *Johnson*, 109 S.Ct. at 2543 n. 6. Based on this language, the Senate argues that the Court is prepared to uphold a statute which affords such protection to the flag.

This court need not consider what the Supreme Court would do in the face of such legislation because the Flag Protection Act does not accomplish this end. Although the Act does not focus on the actor's motive, the types of conduct proscribed are those generally associated with disrespect for the flag. Other types of conduct which also threaten the physical integrity of the flag but which do not communicate a negative or disrespectful message, like flying the flag in inclement weather or carrying it into battle, are not prohibited. Thus, the Act fails to protect the flag's physical integrity in all circumstances.

the House's contention that flying the flag to claim sovereignty has a concrete legal purpose and that protecting the flag protects that sovereignty interest. In support of this argument, the House recounts the history of the use of the United States flag as an indicator of sovereignty, including numerous instances in which violations of the flag's physical integrity have been deemed threats to the sovereignty of this nation.

There are two serious problems with the House's argument: First, the legislative history is replete with references to the importance of protecting the flag because of the values it symbolizes. But the legislative history contains not one mention of the sovereignty interest as a reason for enacting the legislation.

Second, the use of the flag as a means of indicating sovereignty is itself a symbolic use. The government's only possible interest in protecting the physical integrity of the flag as an incident of sovereignty is to prevent or punish acts of disrespect amounting to a rejection of United States sovereignty, *i.e.,* expressive conduct. Thus, even if Congress does seek to prevent harm to the flag as an incident of sovereignty, that interest relates to the suppression of expression and is subject to strict scrutiny.[7]

### C. Strict Scrutiny of Government Interest

■ The final step in the analysis of the constitutionality of the Flag Protection Act is to determine whether the government's interest in enacting the statute can survive the applicable strict scrutiny standard. *Johnson,* 109 S.Ct. at 2542–48.

The court begins with the observation that, as in *Johnson,* this case involves the prosecution of defendants for expressing political ideas, "expression situated at the core of our First Amendment values." *Id.* at 2543; *Boos,* 485 U.S. at 318, 108 S.Ct. at 1162. However, the court is also cognizant that an act of Congress carries with it a strong presumption of constitutionality. *Rostker v. Goldberg,* 453 U.S. 57, 64, 101 S.Ct. 2646, 2651, 69 L.Ed.2d 478 (1981); *United States v. Watson,* 423 U.S. 411, 421–23, 96 S.Ct. 820, 826–27, 46 L.Ed.2d 598 (1976).

After carefully considering the provisions of the Flag Protection Act, the court concludes that the legislation is unconstitutional as applied to the facts of this case. It is clear that, pursuant to the decision in *Johnson,* the asserted governmental interest in protecting the symbolic value of the flag cannot survive the exacting scrutiny which this court must apply. As *Johnson* bluntly stated, "nothing in our precedents suggests that a State may foster its own view of the flag by prohibiting expressive conduct relating to it." *Johnson,* 109 S.Ct. at 2545.

Indeed, both the House and the Senate in effect concede this point. By arguing so strenuously that the constitutionality of the Flag Protection Act should be decided under the more lenient *O'Brien* standard, they implicitly recognize that the Act cannot survive the more stringent standard applied in *Johnson.*

The Department of Justice, however, urges the court to find that the government does have a sufficiently compelling interest in preserving the flag as a political symbol to survive strict scrutiny. Acknowledging that *Johnson* ruled to the con-

7. The case on which the House of Representatives relies in support of its argument likewise fails to differentiate between the flag as an incident of sovereignty and its role as a symbol of the nation. In *Joyce v. United States,* 454 F.2d 971, 985 (D.D.C.1971), the court found that the power to adopt a national flag and to regulate conduct with respect to it was "an incident of sovereignty which inheres in the Government of the United States of America as a nation and which the Constitution recognizes and implements." However, the *Joyce* court went on to hold that the governmental interest in protecting the flag from desecration was "a reflection of the interest which the people of the United States have manifested, through their representatives, in having a symbol to represent them as a nation." *Id.* at 988.

The court also notes that the House does not explain how the governmental interest in preserving the flag as an incident of sovereignty would be harmed by defendants' act of flag-burning.

trary and recognizing that this court cannot overrule the United States Supreme Court, the Department of Justice nevertheless contends that this court can rely on the recent governmental affirmations of a compelling national interest in protecting the flag as evidenced by the congressional enactment of the Flag Protection Act and the presidential call for a constitutional amendment.

Again, *Johnson* precludes such a result. The Court in *Johnson* forcefully rejected the notion that the government can restrict the use of a symbol to reflect only one view of that symbol:

> To conclude that the Government may permit designated symbols to be used to communicate only a limited set of messages would be to enter territory having no discernible or defensible boundaries.... To do so, we would be forced to consult our own political preferences, and impose them on the citizenry, in the very way that the First Amendment forbids us to do.

109 S.Ct. at 2546. Thus, the *Johnson* Court reaffirmed that the core purpose of the First Amendment is to protect political dissent, and that to suppress such criticism in one instance so as to protect the sensibilities of the majority does not strengthen the nation. On the contrary, it erodes the basis of our political freedom.

Moreover, the Court found no constitutional basis or legal precedent for treating the flag any differently from other concepts and symbols, and "decline[d] ... to create for the flag an exception to the joust of principles protected by the First Amendment." *Id.*

## III. CONCLUSION

For the above reasons, this court GRANTS defendants' motion to dismiss Count II of the information against them on the grounds that the Flag Protection Act is unconstitutional as applied to their conduct in burning a United States flag.

Although it believes that the law clearly requires this result, the court respects the strong feelings held by many on this issue. The court is well aware of the reverence with which many people who have sacrificed much for this country regard the United States flag. But in order for the flag to endure as a symbol of freedom in this nation, we must protect with equal vigor the right to wave it and the right to destroy it. As Justice Brennan said in *Johnson,* "[w]e do not consecrate the flag by punishing its desecration, for in doing so we dilute the freedom that this cherished emblem represents." 109 S.Ct. at 2547–48.

This is an inspiring time for those of us who treasure freedom. Countries all over the world are striving to adopt democratic principles derived from our Constitution as part of their forms of government. The freedom of speech enshrined in our First Amendment is the crucial foundation without which other democratic values cannot flourish. It is a tribute to the strength of our nation and to our faith in democratic government that even a means of protest which is profoundly painful and offensive to many people is protected.

Burning the flag as an expression of political dissent, while repellent to many Americans, does not jeopardize the freedom which we hold dear. What would threaten our liberty is allowing the government to encroach on our right to political protest. It is with the firm belief that this decision strengthens what our flag stands for that this court finds the Flag Protection Act unconstitutional as applied to defendants' conduct in burning the flag.[8]

---

8. Given this result, the court need not address defendants' other argument that the Flag Protection Act is unconstitutional on its face.