

# COURT OF CRIMINAL APPEALS

P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

**SHARON KELLER**
PRESIDING JUDGE

**LAWRENCE E. MEYERS**
**CHERYL JOHNSON**
**MIKE KEASLER**
**BARBARA P. HERVEY**
**ELSA ALCALA**
**BERT RICHARDSON**
**KEVIN P. YEARY**
**DAVID NEWELL**
JUDGES

**ABEL ACOSTA**
CLERK
(512) 463-1551

**SIAN SCHILHAB**
GENERAL COUNSEL
(512) 463-1597

FILED IN COURT OF APPEALS
12th Court of Appeals District
OCT 08 2015
TYLER TEXAS
PAM ESTES, CLERK

October 07, 2015

12th Court Of Appeals Clerk
Cathy Lusk
1517 W. Front, Room 354
Tyler, TX 75701
* DELIVERED VIA E-MAIL *

County Attorney
Houston County
100 N 6th
Crockett, TX 75835

Carolyn Rains
District Clerk
PO Box 1186
Crockett, TX 75835
* DELIVERED VIA E-MAIL *

Joshua Thomas Liles
800 N. Mallard St.
Palestine, TX 75801
* DELIVERED VIA E-MAIL *

Amber N. Bewley
Assistant County Attorney
401 E. Houston Ave., 2nd Floor
Crockett, TX 75835
* DELIVERED VIA E-MAIL *

**Re:** STATE vs. JOHNSON, TERENCE
**CCA No.** PD-0228-14
**Trial Court Case No.** 12-06-00189-CR

**COA No.** 12-12-00425-CR

The court has issued an opinion on the above referenced cause number.

Sincerely,

Abel Acosta, Clerk



FILED IN COURT OF APPEALS
12th Court of Appeals District

OCT 08 2015

TYLER TEXAS
PAM ESTES, CLERK

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0228-14

### THE STATE OF TEXAS

v.

### TERENCE JOHNSON, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TWELFTH COURT OF APPEALS
## HOUSTON COUNTY

KELLER, P.J., delivered the opinion of the Court in which JOHNSON, KEASLER, HERVEY, ALCALA, and RICHARDSON, JJ., JOINED. ALCALA, J., filed a concurring opinion. MEYERS, J., filed a dissenting opinion. YEARY, J., filed a dissenting opinion. NEWELL, J., dissents.

Twenty-six years ago, the United States Supreme Court held that the prosecution of Gregory Lee Johnson under the Texas flag-desecration statute for burning an American flag violated the First Amendment.[1] Texas has since revised and renamed the statute, which now provides in part:

A person commits an offense if the person intentionally or knowingly damages,

---

[1] *Texas v. Johnson*, 491 U.S. 397 (1989).

defaces, mutilates, or burns the flag of the United States or the State of Texas.[2]

We hold that the statute is invalid on its face because it is unconstitutionally overbroad in violation of the First Amendment.

## I. BACKGROUND

### A. The Incident

Video-camera surveillance showed two men and one woman walking on a covered sidewalk next to a building. One man jumped towards a hanging United States flag. Then the second man—appellee—reached and jumped for the flag and caused the flag and its staff to come off its post into his hand. Appellee then threw the flag and its staff into the street. At almost the same time that appellee threw the flag into the street, the other man knocked over flower pots along the sidewalk. Upon approaching the surveillance camera, appellee made various hand gestures and walked out of view.

In a recorded interview that occurred later, appellee explained that he threw the flag because he was "mad." He claimed that he was upset because of racial remarks made about his mother by a local merchant.

### B. Trial Proceedings

As a result of this incident, appellee was charged by information with violating the Texas flag-destruction statute, Texas Penal Code § 42.11. The information alleged that, on or about April 29, 2012, appellee did "[i]ntentionally or knowingly damage, deface, or mutilate a flag of the United States by throwing the flag onto the ground/roadway of Highway 19." The information further alleged that this act was not done in conformity with statutes relating to the proper disposal of

---

[2] TEX. PENAL CODE § 42.11(a).

damaged flags.

Appellee filed a motion to dismiss the information. At the hearing on the motion to dismiss, the parties presented argument on the constitutionality of the flag-destruction statute, and the State introduced the surveillance video and the recording of appellee's interview.

The trial judge ultimately granted the motion to dismiss. In her order, the trial judge observed that appellee could have been charged with criminal mischief under Texas Penal Code § 28.03, but, because his actions involved the United States flag, officers charged him under § 42.11. Citing *Texas v. Johnson*[3] and *United States v. Eichman*,[4] the trial judge concluded, "[S]tatutes which criminalize behavior because it specifically prohibits acts against the flag of the United States have consistently been found to be unconstitutional due to the restriction on the Constitutional rights to free speech and expression." Although Texas amended its statute after the United States Supreme Court handed down *Texas v. Johnson*, the trial judge concluded that the current statute contains language similar to the federal statute in *Eichman*, in which the Supreme Court found a First Amendment violation. The trial judge also rejected the State's argument that the defendant's actions were not speech. "If an action such as burning the flag is protected speech," the trial judge explained, "the action of throwing a flag to the ground can also be protect[ed] speech. Non-verbal action is expressive, [and] the government may not prohibit expression simply because it disagrees with the message or the way it is expressed." While the trial judge found the mistreatment of the United States Flag to be "personally appalling," she concluded that she was "bound to follow the rulings of higher courts."

---

[3] *See supra* n.1.

[4] 496 U.S. 310 (1990).

## C. Appeal

The State appealed. It contended that the statute was constitutional both on its face and as applied to appellee. With respect to appellee's facial challenge, the State contended that appellee had the burden to establish the statute's unconstitutionality and failed to meet that burden. The State contended that appellee had "not presented any evidence, cases, or arguments establishing [the statute's] unconstitutionality, with the exception of cases that never reached the issue of whether the statute in question was unconstitutional on its face." With respect to appellee's as-applied challenge, the State contended that appellee's conduct was not expressive because anyone observing his actions would believe merely that he was vandalizing the hardware store that displayed the flag and because nothing suggested that appellee was communicating any message at all. Part of the reason the State believed appellee's conduct was not expressive was that he told the police that he was angry at a merchant from a different store from the one whose flag he vandalized.

The court of appeals rejected appellee's claim that the flag-destruction statute was unconstitutional as applied. It concluded that appellee's conduct was not sufficiently imbued with elements of communication so as to implicate the First Amendment.[5] But the court of appeals found that § 42.11 was unconstitutional on its face because it was overbroad in violation of the First Amendment.[6] In arriving at its holding, the court researched cases in Texas and other jurisdictions that were handed down after *Texas v. Johnson* and *United States v. Eichman,* and the court "found

---

[5] *State v. Johnson*, 425 S.W.3d 542, 549 (Tex. App.–Tyler 2014). Judge Yeary's dissent says that the "statute most certainly was applied constitutionally under the circumstances presented here." For reasons discussed later, we do not think that conclusion is self-evident. But appellee did not file a cross-petition complaining about the court of appeals's disposition of his as-applied challenge, so we have no occasion to resolve that claim.

[6] *Id.* at 550-54.

no case in which an individual was prosecuted under a flag desecration statute that was determined to be both constitutional on its face and as applied."[7] The court of appeals acknowledged that the lack of authority relating to the prosecution of individuals for flag desecration arguably shows a pattern of non-enforcement, but the court concluded that the statute was "not sufficiently narrow to prevent a chilling effect on the exercise of First Amendment freedoms" and that the court was "not permitted to uphold an unconstitutional statute, even if there are promises to use it responsibly."[8]

## II. ANALYSIS

### A. The Overbreadth Doctrine

The First Amendment protects, among other things, the freedom of speech.[9] The First Amendment right to freedom of speech applies to the states by virtue of the Fourteenth Amendment.[10]

With respect to constitutional provisions other than the First Amendment, a facial challenge to the constitutionality of a statute can succeed only when it is shown that the statute is unconstitutional in all of its applications.[11] And usually, a defendant does not have standing to

---

[7] *Id.* at 551-52.

[8] *Id.* at 553.

[9] U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech.").

[10] *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 638-39 (1943).

[11] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 & n.6 (2008); *State v. Rosseau*, 396 S.W.3d 550, 557-58 (Tex. Crim. App. 2013). *See also United States v. Stevens*, 559 U.S. 460, 472-73 (2010).

challenge a statute on the ground that it may be unconstitutionally applied to the conduct of others.[12]

But under the First Amendment's "overbreadth" doctrine, a law may be declared unconstitutional on its face, even if it may have some legitimate application and even if the parties before the court were not engaged in activity protected by the First Amendment.[13] "Ordinarily, the principal advantage of the overbreadth doctrine for a litigant is that it enables him to benefit from the statute's unlawful application *to someone else*."[14]

The overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort.[15] The overbreadth of a statute must be "substantial, not only in an absolute sense, but also

---

[12] *County Court of Ulster, N.Y. v. Allen*, 442 U.S. 140, 155 (1979); *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). This general rule of standing is not the same as the jurisdictional "injury-in-fact" standing requirement of Article III of the United States Constitution. The injury-in-fact requirement entails a showing that a party has a personal stake in the outcome of the controversy by requiring that the party's interest be "concrete and particularized" and "actual or imminent" rather than conjectural or hypothetical. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). A prosecution under an allegedly unconstitutional law—like in this case—clearly satisfies that requirement because appellant has been arrested and prosecuted. *Id.* at 2342 (observing that "an actual arrest, prosecution, or other enforcement action" is not required to establish injury in fact so long as the threat of such is sufficiently imminent); *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 954-55 (1984) (threat of prosecution was sufficient to establish injury in fact). The principle that parties may not assert the unconstitutionality of a law as to others is a *prudential* standing requirement. *Munson*, 467 U.S. at 955 ("In addition to the limitations on standing imposed by Art. III's case-or-controversy requirement, there are prudential considerations that limit the challenges courts are willing to hear" including that the party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). The jurisdictional injury-in-fact requirement has no exceptions in federal court, but prudential standing requirements have been relaxed "where competing considerations outweigh any prudential rationale against third-party standing" such as in First Amendment overbreadth claims. *Id.* at 956-58.

[13] *Stevens*, 559 U.S. at 473; *Sabri v. United States*, 541 U.S. 600, 609-10 (2004).

[14] *Board of Trustees v. Fox*, 492 U.S. 469, 483 (1989) (emphasis in original).

[15] *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988); *Broadrick*, 413 U.S. at 613. *See also Ex parte Thompson*, 442 S.W.3d 325, 349 (Tex. Crim. App. 2014).

relative to the statute's plainly legitimate sweep."[16] The statute must prohibit a substantial amount of protected expression,[17] and the danger that the statute will be unconstitutionally applied must be realistic[18] and not based on "fanciful hypotheticals."[19] The person challenging the statute must demonstrate from its text and from actual fact "that a substantial number of instances exist in which the Law cannot be applied constitutionally."[20] The Supreme Court "generally do[es] not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law."[21] Moreover, the overbreadth doctrine is concerned with preventing the chilling of protected speech and that concern "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct."[22] "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct that is necessarily associated with speech (such as picketing or demonstrating)."[23]

Judge Yeary's dissenting opinion suggests that, as a matter of state law, we might be free to refuse to entertain overbreadth claims. We do not agree. The dissent relies upon the United States

---

[16] *United States v. Williams*, 553 U.S. 285, 292 (2008).

[17] *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002); *Thompson*, 442 S.W.3d at 349-50.

[18] *Regan v. Time*, 468 U.S. 641, 651 n.8 (1984); *Thompson*, 442 S.W.3d at 350.

[19] *Stevens*, 559 U.S. at 485.

[20] *New York State Club Ass'n*, 487 U.S. at 14.

[21] *Washington State Grange*, 552 U.S. at 449-50 n.6.

[22] *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

[23] *Id.*

Supreme Court case of *Virginia v. Hicks*[24] and the Utah Supreme Court case of *Provo City Corp. v. Willden.*[25] But *Hicks* itself recognized that whether the claimed overbreadth is substantial enough to result in facial invalidity involves "not standing, but 'the determination of [a] First Amendment challenge on the merits.'"[26] And in *Secretary of Maryland v. Joseph H. Munson Co.*, the United States Supreme Court made it clear that the overbreadth doctrine is in fact a part of substantive First Amendment law:

> [T]he Secretary urges that Munson should not have standing to challenge the statute as overbroad because it has not demonstrated that the statute's overbreadth is "substantial." The Secretary raises a point of valid concern. . . . The Secretary's concern, however, is one that is more properly reserved for the determination of Munson's First Amendment challenge on the merits. The requirement that a statute be "substantially overbroad" before it will be struck down on its face is a "standing" question only to the extent that if the plaintiff does not prevail on the merits of its facial challenge and cannot demonstrate that, as applied to it, the statute is unconstitutional, it has no "standing" to allege that, as applied to others, the statute might be unconstitutional.[27]

Moreover, *New York v. Ferber* contains what appears to be an explicit statement that state courts are bound to apply the First Amendment overbreadth doctrine: "A state court is not free to avoid a proper facial attack on federal constitutional grounds. . . . By the same token, it should not be compelled to entertain an overbreadth attack when not required to do so by the Constitution."[28]

---

[24] 539 U.S. 113 (2003).

[25] 768 P.2d 455 (Utah 1989).

[26] 539 U.S. at 120 (quoting *Munson*, bracketed material in *Hicks*).

[27] 467 U.S. at 958-59 (citations omitted). *See also Sabri*, 541 U.S. at 610 (citing "Monaghan, Overbreadth, 1981 S. Ct. Rev. 1, 24 (observing that overbreadth is a function of substantive First Amendment law)").

[28] 458 U.S. 747, 767 (1982) (citing *Bigelow v. Virginia*, 421 U.S. 809, 817 (1975)).

The dissent relies on the following passage in *Hicks* for the proposition that states may adopt their own standing requirements for overbreadth challenges: "Whether Virginia's courts should have *entertained* this overbreadth challenge is entirely a matter of state law."[29] But these comments appear to relate to the issue of whether a state is bound to apply the narrow standing requirements that exist in federal court, or whether a state may instead have less stringent standing requirements. The Supreme Court explained that "the problem" with the Commonwealth's proposal was that the Court was reviewing the decision of a state supreme court and state courts are not bound "by the limitations" of a case or controversy or other federal rules of justiciability even when they address issues of federal law.[30] The cited comments, therefore, seem to be a recognition of the unexceptional proposition that states can provide defendants more protection than federal law provides.[31]

The dissent also relies on a passage from *Willden*[32] that appears, on its face, to support the dissent's position. But in that case, the Utah Supreme Court also seems to suggest that a state's leeway with respect to standing involved whether the state could have less stringent standing requirements than those in federal court.[33] Regardless of the ambiguity, the Supreme Court of Utah

---

[29] 539 U.S. at 120 (emphasis in original).

[30] *Id.*

[31] *See Florida v. Powell,* 559 U.S. 50, 59 (2010).

[32] 768 P.2d at 455-56 ("[T]he federal rules on standing . . . are not binding on state courts, and the article III constitutional restrictions and federalistic prudential considerations that have guided the evolution of federal court standing law are not necessarily relevant to the development of the standing rules that apply to Utah's state courts.")

[33] *See id.* at 456-57 (remarking on the "rather narrow standing doctrines developed by the federal courts" and quoting the Supreme Court's recognition in *New York State Club Ass'n,* 487 U.S. at 8 n.2, that state courts may "issue advisory opinions or . . . determine matters that would not satisfy the more stringent requirement in the federal courts that an actual 'case' or 'controversy' be

ultimately applied the overbreadth doctrine and found the statute before it to be facially unconstitutional.[34]

In *Jaynes v. Commonwealth*, the Supreme Court of Virginia addressed and rejected the exact argument made in Judge Yeary's dissent.[35] The Virginia court remarked that, on its face and without context, the cited passage from *Hicks* "appears to support the rule of standing advocated by the Commonwealth. In a nutshell, that rule would be that state courts are not required to apply the same standing requirements to a claimant who raises a First Amendment overbreadth challenge to a state statute in a state court as would be accorded a claimant in a federal court considering a similar First Amendment overbreadth claim."[36] "However," the court responded, "when viewed in the context of the standing issue actually presented in [*Hicks*], and the longstanding Fourteenth Amendment jurisprudence by which First Amendment rights are made applicable in state court proceedings, we disagree with the Commonwealth's arguments."[37] Virginia's high court noted this colloquy, which took place in the *Hicks* case during oral argument before the United States Supreme Court:

> QUESTION: The issue is whether - whether [Virginia] adopted a broader interpretation under State law than Federal law would require.
>
> [ANSWER]: That is correct. A - a State may well be able to adopt a broader interpretation of standing than this Court requires, *but it cannot adopt a narrower interpretation. It cannot disregard this Court's direction that you give overbreadth standing according to the Federal constitutional standards. . . .*

---

presented for resolution").

[34] *Willden*, 768 P.2d at 455, 458-59.

[35] 276 Va. 443, 454, 666 S.E.2d 303, 308 (2008).

[36] *Id.* at 455, 666 S.E.2d at 309.

[37] *Id.*

QUESTION: And if they were correct about what our standing rules are, they would have to follow those standing rules, wouldn't they? They could not apply a narrower . . . basis for standing, could they?

[ANSWER]: That is absolutely correct, Your Honor. *The State supreme court has no discretion to disregard this Court's application of the First Amendment through its overbreadth doctrine.*[38]

The Supreme Court of Virginia further observed that the overbreadth doctrine is a matter of substantive First Amendment law, and as such, it is "a constitutional exception to state and federal rules of standing that would otherwise limit a party to an as applied challenge to a statute."[39] That court also discussed the facts and procedural posture of *Hicks*, and it concluded that it was clear that in *Hicks* the Supreme Court addressed the issue of First Amendment standing "only in the context by which that issue was placed before the Court: whether a state's *expansion* of First Amendment standing was subject to review by federal courts."[40] Analyzing the passage in *Hicks* where the Supreme Court stated "[w]hether Virginia's courts should have entertained this overbreadth challenge is entirely a matter of state law," the *Jaynes* court found that "the term 'this' plainly limits the standing issue to what was before the Court in that case: an expansion, not a restriction, of state court standing."[41] We agree.

Moreover, it is difficult to understand how the overbreadth doctrine could ever be applied *by any court* to invalidate a state law in its entirety if the doctrine is not itself a federal constitutional

---

[38] *Id.* at 456-57, 666 S.E.2d at 310 (quoting Oral Arg. Tr., *Virginia v. Hicks*, No. 02-371, at 5 (Apr. 30, 2003)) (bracketed material and emphasis in *Jaynes*).

[39] *Id.* at 458, 666 S.E.2d at 310-11.

[40] *Id.* at 457, 666 S.E.2d at 310 (emphasis in *Jaynes*).

[41] *Id.*

doctrine that the state courts have to follow.[42] This status of overbreadth as a substantive constitutional doctrine is similar in that respect to Fourth Amendment expectation-of-privacy issues, which can be characterized as involving "standing," but are more accurately viewed as part of substantive Fourth Amendment law.[43] No one would claim, for example, that a state court can decline to entertain the Fourth Amendment claims of an overnight guest on the ground that overnight guests simply do not have standing in state court under state law.[44]

Judge Yeary's dissent attempts to draw a distinction between the substantive rule of overbreadth and a procedural rule of overbreadth that accords liberalized standing. He claims that he would not change the substantive rule but would merely restrict which litigants could successfully bring a First Amendment overbreadth claim in state court. But we are not confronted with the question of whether a claim confers standing sufficient to allow the individual to *appear* in court.

---

[42] *See Dickerson v. United States*, 530 U.S. 428, 438 (2000) (holding that "first and foremost of the factors" supporting the conclusion that "*Miranda* is a constitutional decision" is that the case applied the rule to "prosecutions arising in state courts"); *NAACP v. Button*, 371 U.S. 415, 432-33 (1961) (recognizing the application of overbreadth doctrine to state laws and explaining that, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity").

[43] *See Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978) (citations omitted) (reaffirming general standing principles but stating that "this Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing") (citations omitted); *State v. Klima*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996) (recognizing that "the application of Fourth Amendment rights are personal in nature and are invariably intertwined with the concept of standing").

[44] *See Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990). *See also Jaynes*, 276 Va. at 458, 666 S.E.2d at 311 (The Commonwealth's view "is an untenable position because the right to assert the protection of the First Amendment (by overbreadth or otherwise) can no more be restricted by a state rule of standing than the exclusionary rule applied to impermissible searches and seizures could be limited by state evidence law.").

This is not a civil lawsuit filed by a person seeking to invoke a court's jurisdiction on a First Amendment claim.[45] This case—a criminal prosecution—is the *State's* action. The State has already invoked the jurisdiction of the courts, with the flag-destruction statute being the basis for that invocation. As a result, the trial court had authority to decide the case, and authority to review that decision on appeal was conferred by Chapter 44 of the Code of Criminal Procedure.[46] Appellee has simply defended against the State's action by substantively challenging the facial constitutionality of the flag-destruction statute. The trial court agreed and dismissed the information, and it is the State that now seeks the intervention of this Court to overturn the trial court's substantive legal decision. If accepting the overbreadth doctrine as a matter of substantive federal constitutional law means anything, it means, at the least, that a criminal defendant can defend himself in a criminal prosecution by challenging the constitutionality of the statute defining the crime with which he is charged. The dissent says that this violates the Separation of Powers clause of the Texas

---

[45] Nor is the present case even a habeas action, which might at least arguably be said to affirmatively invoke a court's jurisdiction, although it might also be characterized as a vehicle for challenging the State's criminal action, especially when invoked at the pretrial stage. *See Ex parte Rieck*, 144 S.W.3d 510, 515 (Tex. Crim. App. 2004) (discussing differing ways of characterizing the nature of habeas proceedings).

[46] *See* TEX. CODE CRIM. PROC. arts. 44.01, 44.02. The Supreme Court has recognized that the posture of the case before the court—how the action came before it and which party is complaining—can affect the existence of standing. *See Hicks*, 539 U.S. at 120-21 ("Because it is the Commonwealth of Virginia, not Hicks, that has invoked the authority of the federal courts by petitioning for a writ of certiorari, our jurisdiction to review the First Amendment merits question is clear . . . . The Commonwealth has suffered, as a consequence of the Virginia Supreme Court's 'final judgment altering tangible legal rights,' . . . an actual injury in fact—inability to prosecute Hicks for trespass—that is sufficiently 'distinct and palpable' to confer standing under Article III . . . . We accordingly proceed to that merits inquiry, leaving for another day the question whether our ordinary rule that a litigant may not rest a claim to relief on the legal rights or interests of third parties . . . would exclude a case such as this from *initiation* in federal court.") (emphasis added).

Constitution,[47] but "[t]he power to determine the validity of an Act of the legislature rests with the Courts."[48]

The dissent also contends that allowing an overbreadth claim by a person who cannot show that the statute is unconstitutional as to him invites us to assume the power to issue advisory opinions and that we are without power to do that. The United States Supreme Court, which recognizes overbreadth claims, is also—under Article III of the United States Constitution—without power to render advisory opinions.[49] By holding that overbreadth is an exception to a *prudential* rule of standing, rather than to *jurisdictional* standing under Article III,[50] the Supreme Court has effectively held that the overbreadth doctrine does not give rise to advisory opinions.[51] Even if we could depart from Supreme Court precedent in deciding whether to recognize overbreadth claims, we do not see any reason to construe "advisory opinions" to mean something different under state law than it does in the Supreme Court's jurisprudence. There is nothing advisory or hypothetical about the consequence of a criminal defendant prevailing on an overbreadth challenge to the statute that

---

[47] *See* TEX. CONST. art. II, § 1.

[48] *Ex parte Halsted*, 147 Tex. Crim. 453, 457, 182 S.W.2d 479, 482 (1944).

[49] *See Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 516 (2007) (No justiciable controversy exists under Article III of the United States Constitution when the parties ask for an advisory opinion.).

[50] *See supra* n. 12.

[51] *See also Federal Election Commission v. Akins*, 524 U.S. 11, 24 (1998) (indicating the injury-in-fact requirement of Article III prevents advisory opinions); *Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012) (holding that overbreadth claimant must still show that enforcement of the challenged statute against him is actual or imminent and quoting *Prime Media v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007): "Because overbreadth creates an exception only to the prudential standing inquiry, the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment.").

defines the charged offense—the case against him is dismissed.

## B. The State's Arguments

The State contends that appellee has failed to meet his burden to show that the flag-destruction statute is substantially overbroad by its text and has a substantial number of unconstitutional applications in actual fact. With respect to the text, the State contends that the statute is a legitimate content-neutral law because it does not expressly restrict speech and because it punishes any kind of damage or destruction to a United States or Texas flag, regardless of the actor's motive. The State further contends that the amount of protected speech covered by § 42.11 is "minimal when compared to the non-expressive conduct lawfully prohibited" and that any risk of a chilling effect is "dwarfed by the number of lawful applications" of the statute.[52]

With respect to whether the statute has a substantial number of unconstitutional applications in actual fact, the State contends that appellee has failed to "provide examples of actual people who have been deterred from engaging in protected speech or conduct." The State further contends that the court of appeals conceded that the absence of evidence of prosecution under this statute arguably shows a pattern of non-enforcement.[53] The State argues that the statute produces no chilling effect because "the average citizen generally understands that burning a flag as part of expressive speech or conduct is protected by the United States Constitution."[54]

The State also contends that appellee's conduct was not protected by the First Amendment

---

[52] At oral argument, the State claimed that "almost all" of the conduct the statute covers is outside the First Amendment's protection.

[53] *See Johnson*, 425 S.W.3d at 553.

[54] State's brief quoting *id.* at 552 (quoting *Roe v. Milligan*, 479 F. Supp. 2d 995, 1007 (S.D. Iowa 2007)).

because it was not expressive:

> Appellee's conduct instead constituted an act of criminal mischief with no intent to convey any particularized message. Indeed, according to appellee, he did not even expect the flag to come off its staff and into his hand when he jumped and reached for it. Appellee attempted to explain his conduct by claiming he was mad [at] a local merchant. However, in no way did his actions relay that he was angry with a local merchant. In fact, the flag that he threw onto the highway was in front of a different store than the one appellee claimed to be angry with. Further, there was no element of speech in his conduct. The very way appellee committed his crime was random in nature.[55]

During oral argument, the State suggested that the flag-destruction statute was "really just criminal mischief in relation to the flag." The State argued that a punishment provision with respect to conduct directed against the flag—similar to current provisions that enhance punishment for damage to churches and public monuments—could have been included in the criminal-mischief statute.[56] If the flag-destruction statute sweeps too broadly by punishing someone who damages his own flag, the State further argued, the statute could be narrowly construed to apply only to situations in which the conduct would actually constitute criminal mischief, i.e. damage to someone else's property.[57]

## C. The Statute

### 1. *The Text*

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible

---

[55] Citations omitted, some capitalization changed.

[56] *See* TEX. PENAL CODE § 28.03(f) (state-jail felony punishment if criminal mischief involves "place of worship or human burial, a public monument, or a community center that provides medical, social, or educational programs").

[57] *See id.* § 28.03.

to determine whether a statute reaches too far without first knowing what the statute covers."[58] The Texas flag-destruction statute provides:

> (a) A person commits an offense if the person intentionally or knowingly damages, defaces, mutilates, or burns the flag of the United States or the State of Texas.
>
> (b) In this section, "flag" means an emblem, banner, or other standard or a copy of an emblem, standard, or banner that is an official or commonly recognized depiction of the flag of the United States or of this state and is capable of being flown from a staff of any character or size. The term does not include a representation of a flag on a written or printed document, a periodical, stationery, a painting or photograph, or an article of clothing or jewelry.
>
> (c) It is an exception to the application of this section that the act that would otherwise constitute an offense is done in conformity with statutes of the United States or of this state relating to the proper disposal of damaged flags.[59]

Unlike its predecessor,[60] the current statute narrowly defines what is meant by a "flag," and it excludes certain depictions of a flag from its reach. For example, the current statute avoids past controversies regarding the representation of a flag on clothing by explicitly providing that such does not count as a flag.[61] The current statute also differs from its predecessor in that it does not require that the actor be aware of the likely impact of his conduct on others.[62]

---

[58] *Williams*, 553 U.S. at 293.

[59] TEX. PENAL CODE § 42.11(a)-(c). The statute also provides that the offense is a Class A misdemeanor. *Id.* § 42.11(d).

[60] *See* TEX. PENAL CODE § 42.09(a)(3) (West 1988) ("A person commits an offense if he intentionally or knowingly desecrates . . . a state or national flag.")

[61] *See Smith v. Goguen*, 415 U.S. 566 (1974) (United States flag sewn to the seat of defendant's trousers); *Delorme v. State*, 488 S.W.2d 808 (Tex. Crim. App. 1973) (same).

[62] *See* TEX. PENAL CODE § 42.09(b) (West 1988) ("For purposes of this section, 'desecrate' means deface, damage, or otherwise physically mistreat in a way that the *actor knows will seriously offend one or more persons likely to observe or discover his action.*") (emphasis added).

The current Texas statute also circumscribes the type of conduct toward a flag that is proscribed. The statute prohibits only physical mistreatment that alters or damages a flag. The statute does not apply to words spoken that are critical of the United States or Texas flag,[63] nor does the statute apply to physical acts that do not alter or damage a flag.[64]

### 2. Narrowing Construction?

The federal constitution affords the states broad authority to construe a statute narrowly to avoid a constitutional violation.[65] At the outset, we will assume that the flag-destruction statute applies only to acts that physically damage a flag.[66]

The State argues that the statute may be construed to apply only to conduct that would otherwise constitute criminal mischief, that is, conduct that damages *someone else's* flag (without consent).[67] We decline to impose such a narrowing construction because nothing in the language of the statute supports it. On the contrary, the text of the statute is unambiguously broad in this respect, applying to the conduct of intentionally or knowingly damaging *any* United States or Texas flag, regardless of who owns the flag and whether that owner has consented to the conduct.

---

[63] *See Street v. New York*, 394 U.S. 576 (1969) (holding unconstitutional, as applied, a statute that punished words that cast contempt on the flag of the United States).

[64] *See People v. Meyers*, 23 Ill. App. 3d 1044, 1045, 321 N.E.2d 142, 143 (5th Dist. 1974) (defendant seen lying on American flag in a public park).

[65] *Osborne v. Ohio*, 495 U.S. 103, 115 n.12, 119-21 (1990); *Thompson*, 442 S.W.3d at 339.

[66] Although the current statute makes it an offense to, among other things, "deface" a flag, we will assume that the term "deface" can be narrowly construed to not apply to temporary attachments to a flag. *See Spence v. Washington,* 418 U.S. 405 (1974) (involving a peace symbol made of removable black tape attached to a United States flag).

[67] *See* TEX. PENAL CODE § 28.03(a).

Although a Texas court has a duty to employ, if possible, a reasonable narrowing construction to avoid a constitutional violation, such a construction should be employed only if the statute is readily susceptible to one.[68] "We may not rewrite a statute that is not readily subject to a narrowing construction because such a rewriting constitutes a serious invasion of the legislative domain and would sharply diminish the legislature's incentive to draft a narrowly tailored statute in the first place."[69] A law is not readily subject to a narrowing construction if its meaning is unambiguous.[70] We should be wary of reading into a statute a narrow meaning not supported by its language because such a construction may later be rejected as untenable.[71] Moreover, when the statute is unambiguous, the public at large will not necessarily be on notice that the law means something other than exactly what it says. Instead, we should act in accordance with our usual rules of statutory construction and construe a statute in accordance with unambiguous language absent a finding of absurd results.[72] Consequently, we construe the flag-destruction statute in accordance with the text's unambiguously broad command against intentionally or knowingly damaging any United

---

[68] *Thompson*, 442 S.W.3d at 339; *Long v. State*, 931 S.W.2d 285, 295 (Tex. Crim. App. 1996). *See also Stevens*, 559 U.S. at 481.

[69] *Thompson*, 442 S.W.3d at 339. *See also Long*, 931 S.W.2d at 295; *Stevens*, 559 U.S. at 481.

[70] *Thompson*, 442 S.W.3d at 339; *Olvera v. State*, 806 S.W.2d 546, 553 (Tex. Crim. App. 1991).

[71] *See Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014) (disavowing statement in *Scott*, made in context of First Amendment challenge, that statutory term "repeated" could be narrowly construed to apply only to activity occurring in close enough proximity to properly be termed a single episode).

[72] *Thompson*, 442 S.W.3d at 339-40. *See also Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

States or Texas flag.[73]

## D. Sweep of the Statute under its Text

### 1. *Unconstitutional Applications*

The Supreme Court has recognized that the conduct of intentionally or knowingly damaging a United States flag is not inherently expressive.[74] As a result, a statute that proscribes such conduct will at least theoretically apply to some circumstances that do not implicate the First Amendment. The question is whether the applications of such a statute that do implicate (and violate) the First Amendment are so substantial that the statute must be held invalid on its face.

It is clear that the Texas flag-destruction statute violates the First Amendment when applied to some circumstances. In *Texas v. Johnson*, the Supreme Court found that the former flag-desecration statute was applied in violation of the First Amendment when the State punished a person who burned a United States flag as part of a protest against the Reagan Administration.[75] The flag-desecration statute made it an offense to "intentionally or knowingly desecrate[] . . . a state or national flag," with "desecrate" being defined to mean to "deface, damage, or otherwise physically

---

[73] *See also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1158-59 (8th Cir. 2014) (declining to limit Missouri flag-desecration statute to non-expressive conduct given the absence of language to suggest such a limitation); *State v. Janssen*, 213 Wis. 2d 471, 480-82, 570 N.W.2d 746, 751 (Ct. App. 1997), *aff'd*, 219 Wis. 2d 362, 580 N.W.2d 260 (1998) (declining to limit Wisconsin statute to non-expressive conduct in part because the statute's "plain reading prohibits *all* intentional and public acts of defiling, mutilating, and casting contempt on the flag; it does not distinguish non-expressive conduct").

[74] *Johnson*, 491 U.S. at 403 n.3 ("A tired person might, for example, drag a flag through the mud, knowing that this conduct is likely to offend others, and yet have no thought of expressing any idea."), 405 ("We have not automatically concluded, however, that any action taken with respect to our flag is expressive. Instead, in characterizing such action for First Amendment purposes, we have considered the context in which it occurred."); *Thompson*, 442 S.W.3d at 334.

[75] 491 U.S. at 399, 418-20.

mistreat in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action."[76] The Court concluded that whether the defendant's treatment of the flag violated Texas law depended on "the likely communicative impact of his expressive conduct."[77] The Court further concluded that such a restriction on expression was content based.[78]

The Court then considered the State's asserted interest in "preserving the flag as a symbol of nationhood and national unity."[79] This interest was found to be insufficient to justify a content-based restriction because "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable" and the Court has "not recognized an exception to this principle even where our flag has been involved."[80] The State argued that, even if the flag's symbolic role does not allow the State to prohibit words or some expressive conduct critical of the flag, it does allow the State "to forbid the outright destruction of the flag."[81] The Court rejected this distinction, saying that it "is of no moment where the nonverbal conduct is expressive, as it is here, and where the regulation of that conduct is related to expression, as it is here."[82] The State's "focus on the precise nature of" the defendant's expression, "misse[d] the point" of the Court's prior decisions:

---

[76] *See id.* at 400 n.1 (quoting TEX. PENAL CODE § 42.09 (1989)).

[77] *Id.* at 411.

[78] *Id.* at 412.

[79] *Id.* at 413.

[80] *Id.* at 414.

[81] *Id.* at 416.

[82] *Id.*

"their enduring lesson, that the government may not prohibit expression simply because it disagrees with its message, is not dependent on the particular mode in which one chooses to express an idea."[83] "If we were to hold that a State may forbid flag burning wherever it is likely to endanger the flag's symbolic role," the Court continued, "but allow it wherever burning a flag promotes that role" then "[w]e would be permitting a State to 'prescribe what shall be orthodox'" in violation of the First Amendment.[84]

Although the current flag-destruction statute differs somewhat from the flag-desecration statute considered in *Texas v. Johnson*, it is similar to the statute considered in *United States v. Eichman*. In *Eichman*, the federal flag-protection statute made it a crime if a person "knowingly mutilates, defaces, physically defiles, burns, maintains on the floor or ground, or tramples upon any flag of the United States" unless the conduct consists of "the disposal of a flag when it has become worn or soiled."[85] The Government relied heavily on the fact that, unlike the statute in *Texas v. Johnson*, the federal statute did not require the actor to have any intent or knowledge with respect to whether his actions would seriously offend onlookers.[86] The Supreme Court was not persuaded that this fact made any difference: "Although the Flag Protection Act contains no explicit content-based limitation on the scope of the prohibited conduct, it is nevertheless clear that the Government's asserted interest is related to the suppression of free expression."[87] "The Government's interest in

---

[83] *Id.*

[84] *Id.* at 416-17.

[85] 496 U.S. at 314.

[86] *Id.* at 315.

[87] *Id.* (internal quotation marks omitted).

protecting the physical integrity of a privately owned flag," the Court explained, "rests upon a perceived need to preserve the flag's status as a symbol of our Nation and certain national ideals."[88] Each of the acts that were prohibited by the statute, with the possible exception of "burns," connoted a disrespectful treatment of the flag, and the explicit exception for the disposal of soiled flags protected "certain acts traditionally associated with patriotic respect for the flag."[89] Consequently, the statute was an impermissible content-based restriction of speech when applied to a person who used the mistreatment of a flag as a method of expressing an idea.[90]

Though the flag-destruction statute before us is not limited solely to expressive conduct, *Eichman* teaches that, when this type of statute *does* apply to expressive conduct, it is an impermissible content-based restriction. As in *Eichman*, the present Texas statute contains an exemption for conduct associated with the proper disposal of a flag. So, as in *Eichman*, the present statute distinguishes between disrespectful and respectful conduct that damages a flag.[91] And while the Texas statute does not require that the disrespectful conduct be expressive, such conduct is very likely to be expressive in a given case because of the symbolism associated with flags. Flags are "[p]regnant with expressive content," and the United States flag "readily signifies this Nation."[92]

---

[88] *Id.* at 315-16.

[89] *Id.* at 317.

[90] *Id.* at 317-19.

[91] Judge Yeary's dissenting opinion says that the legislature enacted the flag-destruction statute in its current form after *Texas v. Johnson* in "an attempt to cure potential constitutional problems with that law." But the Supreme Court issued its opinion in *Eichman* after the current statute was enacted, and it is *Eichman*, more than any other case, that guides our decision today.

[92] *Johnson*, 491 U.S. at 405.

The statutory language clearly applies to those who damage a flag of the United States or Texas as a means of communicating a message (e.g. of protest against the United States or Texas). The only ascertainable purpose of a law as broadly worded as the present one—which applies even when the actor damages his *own* flag—is to protect the integrity of the United States flag or Texas flag as a symbol.[93]

## 2. *Expressive Applications Predominate*

The State contends that the number of lawful applications of the flag-destruction statute dwarfs its unlawful applications, but, aside from the present case, the State does not attempt to describe the lawful applications to which the statute theoretically applies. We are aware of two types of situations suggested by the caselaw that might involve lawful applications to conduct that is non-expressive, but the nature of both situations suggests that prosecutions for them will be uncommon, which in turn suggests that the legitimate reach of the statute is narrow.

The first is conduct toward a flag that is hidden or secretive.[94] The more hidden the conduct, arguably the less expressive it is likely to be,[95] but as conduct becomes more hidden, it also becomes

---

[93] *See Eichman*, 496 U.S. at 315-16. The natural symbolism of the flags, the discrimination between respectful and disrespectful treatment of the flags, and the fact that the obvious legislative purpose is one that is directed at expression distinguishes the statute at issue here from the disorderly-conduct provisions cited in Judge Yeary's dissenting opinion. *See* above discussion of *Eichman*. As will be seen below, the offense of flag destruction also differs from these offenses because prosecutions for flag destruction have typically been directed at expressive activity.

[94] *See Carpenter v. State*, 597 So. 2d 757, 758 (Ala. Crim. App. 1992) (soiled flag wadded up in coat pocket).

[95] *But see Stanley v. Georgia*, 394 U.S. 557 (1969) (First Amendment protects viewing obscenity in the privacy of the home).

less likely to be discovered, and thus less likely to be prosecuted.[96] If the conduct toward a flag is completely hidden, it will likely be only by unusual happenstance that a prosecuting authority will be alerted to the situation.[97]

The second type of situation involving potentially non-expressive conduct involves the person who acts disrespectfully toward a flag with a casual or cavalier attitude but without intending to communicate a message. The hypothetical described by the Supreme Court was that of "a tired person" who might "drag a flag through the mud, knowing that his conduct is likely to offend others, and yet have no thought of expressing any idea."[98] The Court offered this hypothetical merely as a "possibility" that might be prosecuted under the former Texas statute that was analyzed in *Texas v. Johnson*.[99] We agree with other courts that this scenario is an unlikely one.[100]

Most conduct that falls within the provisions of the statute and that would come to the

---

[96] *See Wayte v. United States*, 470 U.S. 598, 612-14 (1985) (discussing passive-enforcement policy of prosecuting those who report their refusal to register for selective service or who are reported and recognizing that Government can more easily prosecute those who openly and obviously violate the law).

[97] *See Carpenter*, 597 So. 2d at 758 (soiled flag wadded up in coat pocket discovered after defendant was arrested for littering and desecrating a Post Office).

[98] *Johnson*, 491 U.S. at 403 n.3.

[99] *Id.* The Court declined to address the constitutionality of such a prosecution because it could decide the case before it on narrower grounds. *Id.*

[100] *Snider*, 752 F.3d at 1158 (calling it an "unlikely hypothetical" and holding the Missouri flag-desecration statute unconstitutionally overbroad); *Commonwealth v. Bricker*, 542 Pa. 234, 246, 666 A.2d 257, 263 (1995) (citing footnote 3 of *Johnson* and stating, "We hold open the possibility that there are narrow categories in which the flag is used in a non-expressive manner and, in this regard, the United States Supreme Court agrees.").

attention of the authorities would constitute protected expression.[101] The assessment of Wisconsin's high court regarding its own flag-desecration statute seems to apply equally to the statute before us: "Although there may be constitutionally permissible applications[,] . . . the number of instances in which the law could be applied to unprotected behavior is small in comparison to the number of instances in which it may be applied to expression protected by the First Amendment."[102]

### 3. *Criminal Mischief Not Relevant*

The State argues that the flag-destruction statute essentially penalizes criminal mischief in relation to the flag, but we disagree. Criminal mischief, as defined in Texas, occurs when a person intentionally or knowingly damages, destroys, tampers with, or makes markings on property "without the effective consent of the owner."[103] As we have already explained, the flag-destruction statute applies even when someone damages his *own* flag.[104]

---

[101] Judge Yeary's dissenting opinion contends that this conclusion is not a proper consideration in an overbreadth analysis because the doctrine "as it is currently enforced by the Supreme Court, requires an examination of the *statute* itself, and not merely the potential or hypothetical First Amendment uses" of the conduct proscribed by the statute. But, as the dissent seems to concede, an examination of the statute and of the possible uses of the conduct proscribed by the statute are not mutually exclusive inquiries. As we explained earlier, the overbreadth doctrine contemplates a showing, from the text and from actual fact, "that a substantial number of instances exist in which the Law cannot be applied constitutionally." *New York State Club Ass'n*, 487 U.S. at 14. Examining the probable First Amendment uses of conduct proscribed by the statute is a necessary step in answering such an inquiry.

[102] *State v. Janssen*, 219 Wis. 2d 362, 387, 580 N.W.2d 260, 270 (1998). Although the Wisconsin statute was broader than the current Texas statute, the Supreme Court of Wisconsin found it to be unconstitutionally overbroad even when narrowed to reach only conduct that defiled the flag through purely physical acts. *Id.* at 382, 580 N.W.2d at 268.

[103] Tex. Penal Code § 28.03(a).

[104] It is indisputably true that a person who damages someone else's flag without consent could validly be punished under a general criminal mischief statute such as Penal Code § 28.03. *See Johnson*, 491 U.S. at 412 n.8 ("[N]othing in our opinion should be taken to suggest that one is free

Furthermore, when considering the possible legitimate applications of the flag-destruction statute, there are two reasons that we should not count cases that amount to criminal mischief: the flag-destruction statute does not require the State to show that the person's conduct toward a flag was an act of criminal mischief,[105] and nothing prevents the State from prosecuting a person under *both*

---

to steal a flag so long as one later uses it to communicate an idea."). Some of the Supreme Court's cases arguably support a conclusion that the State could validly *enhance* punishment for someone who commits criminal mischief on the basis that the property damaged was a United States flag because damage to such property is an especially egregious form of criminal mischief, involving a greater harm to the flag's owner than its monetary value would indicate. *See Virginia v. Black*, 538 U.S. 343, 363 (2003) ("The First Amendment permits Virginia to outlaw cross burnings done with the intent to intimidate because burning a cross is a particularly virulent form of intimidation. Instead of prohibiting all intimidating messages, Virginia may choose to regulate this subset of intimidating messages in light of cross burning's long and pernicious history as a signal of impending violence."); *Wisconsin v. Mitchell*, 508 U.S. 476, 487-88 (1993) (Statute does not violate First Amendment when it "singles out for enhancement bias-inspired [assaultive] conduct because this conduct is thought to inflict greater individual and societal harm.").

In any event, the Supreme Court has explicitly recognized the government's power to protect publicly owned flags. *Eichman*, 496 U.S. at 316 n.5 ("Today's decision does not affect the extent to which the Government's interest in protecting publicly owned flags might justify special measures on their behalf."); *Spence*, 418 U.S. at 409 ("We have no doubt that the State or National Governments constitutionally may forbid anyone from mishandling in any manner a flag that is public property."). It is primarily for this reason that we find Judge Meyers's "mockingbird" analogy unpersuasive. A mockingbird (like a bald eagle) is a wild animal that belongs to the public. It is a finite natural resource, and a government may choose to protect it. *See State v. Bartee*, 894 S.W.2d 34, 41 (Tex. App.–San Antonio 1994, no pet.) (unanimous panel op. by John F. Onion, Jr.) ("History reveals a long recognition of common ownership in game and wild animals and its developing subjectivity to governmental authority."). To the extent that a mockingbird or bald eagle can be analogized to a flag at all, they would be analogous to a *public* flag. A statute that punished the destruction of a depiction of a mockingbird or bald eagle might, however, raise First Amendment concerns.

[105] *See Johnson*, 491 U.S. at 412 n.8 ("There was no evidence that Johnson himself stole the flag he burned . . . nor did the prosecution or the arguments in support of it depend on the theory that the flag was stolen . . . . We also emphasize that Johnson was prosecuted *only* for flag desecration—not for trespass, disorderly conduct, or arson.").

the flag-destruction and criminal-mischief statutes.[106] The criminal-mischief aspect of an actor's conduct is a red herring in a constitutional analysis of the flag-destruction statute: by allowing for a separate prosecution and penalty in addition to that authorized for criminal mischief, the flag-destruction statute enables the State to separately penalize the actor's expression.[107]

However, even if we assumed that the flag-destruction statute could legitimately be applied

---

[106] *See Cullen v. State*, 832 S.W.2d 788, 791-92 (Tex. App.–Austin 1992, pet. ref'd) (in prosecution for the poisoning of the historic Treaty Oak in Austin, rejecting claim that the desecration-of-venerated-object and criminal-mischief statutes must be read *in pari materia* to require prosecution only under the former). *Cullen* addressed the predecessor to the current flag-destruction statute, but its reasoning is equally applicable to the present statute. The flag-destruction and criminal-mischief offenses are not the same under the *Blockburger* same-elements test, and other factors do not suggest that the legislature intended the offenses proscribed by those statutes to be treated as the same. *See id.* at 792 ("These two statutes are contained in different legislative acts, address differing situations, require different elements of proof, and serve different objectives. We believe the legislature intended to define two separate offenses with different elements and different levels of punishment. It follows that section 42.09 is not a special subset of the general offense of criminal mischief."); *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."); *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999) ("The *Blockburger* test is a useful tool for ascertaining legislative intent, but it is not the only tool. Other . . . considerations [are] relevant to determining whether the Legislature intended multiple punishments . . . .").
We further note that the predecessor statute at issue in *Cullen* also penalized the desecration of public monuments and places of worship or burial. *See Cullen*, 832 S.W.2d at 792; Tex. Penal Code § 42.09 (West 1988). Those portions of the statute were later moved to the criminal mischief statute to enhance the level of the offense. *See* Tex. Penal Code § 28.03(f) (current). The legislature has not, however, codified a criminal-mischief enhancement based on destruction of the flag. *See* Tex. Penal Code § 28.03, *passim*.

[107] *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992) ("The proposition that a particular instance of speech can be proscribable on the basis of one feature (e. g., obscenity) but not on the basis of another (e. g., opposition to the city government) is commonplace and has found application in many contexts. We have long held, for example, that nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses—so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not.").

to conduct that amounted to criminal mischief (whether expressive or not), the statute would still cover a wide swath of expressive conduct that does not amount to criminal mischief. Even under that assumption, then, the unconstitutional applications of the statute would, by its text, be substantial in relation to its plainly legitimate sweep.

### E. Sweep of the Statute in Actual Fact

As for whether the application of the flag-destruction statute to expressive activity is significant in actual fact, we need look only to the numerous prosecutions of flag desecration involving physical alteration or damage to a flag that are documented by judicial decisions.[108] By

---

[108] *See Snider*, 752 F.3d at 1154-55 (plaintiff attempted to set fire to flag in his front yard, then shredded it and threw it into the street; officer conceded he violated plaintiff's First Amendment rights); *Janssen*, 219 Wis. 2d at 367-68, 580 N.W.2d at 262 (defecating on a flag and leaving it on the steps to a golf course clubhouse); *Eichman*, 496 U.S. at 312 (setting fire to several United States flags on the steps of the United States Capitol while protesting various aspects of the Government's domestic and foreign policy); *United States v. Cary*, 897 F.2d 917, 919-21 (8th Cir.), *vacated*, 498 U.S. 916 (1990) (at protest of the decision of the United States Government to send 3,200 troops to Honduras, an unidentified woman came up to defendant, handed him a flag, and told him to light it, which he did); *United States v. Haggerty*, 731 F. Supp. 415, 416 (W.D. Wash.), *aff'd sub nom.*, *Eichman*, 496 U.S. 310 (1990) (flag burned at a political demonstration in front of a post office to protest the Flag Protection Act of 1989); *Johnson*, 491 U.S. at 399 (burning flag as part of protest against Reagan administration); *Bowles v. Jones*, 758 F.2d 1479-80 (11th Cir. 1985) (burning flag at Communist rally as a protest against U.S. imperialism); *Monroe v. State Court of Fulton County*, 739 F.2d 568, 570-71 (11th Cir. 1984) (flag burned at protest against U.S. involvement in Iranian affairs); *People v. Sutherland*, 9 Ill. App. 3d 824, 826, 292 N.E.2d 746, 747 (1973) (flag burned to protest against the invasion of Cambodia and the death of the four students at Kent State); *State v. Farrell*, 209 N.W.2d 103, 104 (Iowa 1973) (flag burned at protest of the Indo-China War and the presence of R.O.T.C. on the campus); *United States v. Crosson*, 462 F.2d 96, 98 (9th Cir. 1972) (flag burned by war protestors in R.O.T.C. building); *Joyce v. United States*, 454 F.2d 971, 977-80 (D.C. Cir. 1971) (flag torn by person in group of protestors at Inauguration Day Parade); *Deeds v. State*, 474 S.W.2d 718, 719-20 (Tex. Crim. App. 1971) (flag burned at crowded public park in Dallas); *People v. Burton*, 27 N.Y.2d 198, 201, 265 N.E.2d 66, 66 (Ct. App. 1970) (After affixing a flag to a vacant building and setting it on fire, the defendant said, "I am going to burn Johnson, Humphrey and Wallace just as I am going to burn this flag."); *State v. Turner*, 78 Wash. 2d 276, 277-78, 283-84, 474 P.2d 91, 93, 96 (1970) (flag burned at gathering by organization having to do with the social and economic rehabilitation of a large economically depressed area of Seattle); *United States v. Ferguson*, 302 F. Supp. 1111, 1112 (N.D. Cal. 1969) (flag burned at rally on the front steps of a

contrast, prosecutions involving even arguably non-expressive conduct appear from the cases to be uncommon as a historical matter.[109] Even prosecutions that involve expressive activity that also constitutes criminal mischief appear to be a small proportion of the cases.[110] In fact, we are not aware of a single case since *Eichman* that has resulted in a final conviction under a flag destruction statute. Such prosecutions have been terminated in the defendant's favor because the statute violated the constitution in one way or another[111] or, in one case, because the court declined to address the constitutionality of the statute after finding the evidence insufficient to support the conviction.[112]

## F. Pattern of Non-Enforcement

We turn now to the State's contention that the Texas flag-destruction statute will not be

---

United States District Courthouse). *See also State v. Jimenez*, 828 S.W.2d 455 (Tex. App.–El Paso 1992) (not setting out the alleged conduct but ruling Texas flag-destruction statute unconstitutional).

[109] *See Commonwealth v. Forrey*, 108 A.3d 895, 897 (Pa. Super. 2015) (troopers discovered large debris trail—which included a United States flag—extending from defendant's truck to a wooded area, flag-desecration charge dismissed pretrial); *Bricker*, 542 Pa. at 237-38, 244, 666 A.2d at 259, 262 (dirty and wrinkled flag being used at entrance to home as artistic decoration, holding statute unconstitutional as applied because artistic expression is protected by the First Amendment); *Carpenter*, 597 So. 2d at 758 (soiled flag wadded up in pocket, acquittal on appeal because desecration was not in public); *Meyers*, 23 Ill. App. 3d at 1045, 321 N.E.2d at 143 (person lying on flag in public park, acquittal on appeal because he did not "trample" the flag); *Cincinnati v. Bunch*, 32 Ohio App. 2d 161, 161-62, 288 N.E.2d 854, 855 (1971) (defendant "spread the flag out on the ground and placed his personal property on top of it," conviction for defiling the flag upheld). The last two cases would not appear to be prosecutable under the current Texas statute, and it is not entirely clear whether the first three cases could be.

[110] *See Janssen*, 219 Wis. 2d at 367, 580 N.W.2d at 262 (flag stolen from a golf course); *Haggerty*, 731 F. Supp. at 416 (burned flag belonging to the United Sates Postal Service).

[111] *See supra* nn.108-10; *infra* n.119. The State cites *Milligan*, a federal district court opinion, which found no First Amendment violation, but the opinion held that the statute was void for vagueness in violation of the Fourteenth Amendment. 479 F. Supp. 2d at 1008-14.

[112] *Carpenter*, 597 So. 2d at 758.

unconstitutionally applied in a significant number of instances because there is currently a pattern of non-enforcement. Essentially, the State's argument is that the Supreme Court's opinions in *Texas v. Johnson* and *United States v. Eichman* have deterred and will continue to deter prosecutors from bringing flag-destruction prosecutions that would violate the First Amendment. Concomitantly, the State contends, these cases have caused the average citizen to understand that the United States Constitution protects the right to burn the United States flag to express an idea, so the average citizen will not feel constrained by the statute from engaging in such conduct.[113] It is no doubt true that the Supreme Court's decisions in *Johnson* and *Eichman* have deterred prosecutions for flag desecration[114] and that those decisions have raised awareness among members of the general public that certain disrespectful conduct toward the United States flag is protected by the United States Constitution. But we are not persuaded that the deterrent effect and popular understanding of Supreme Court decisions are valid factors in determining whether a statute is unconstitutionally overbroad.

The State's argument involves a sort of bootstrapping. In effect, the State is arguing that

---

[113] *See Milligan*, 479 F. Supp. 2d at 1007 (contending that "[i]t is reasonable to believe that the average citizen generally understands that burning a flag as part of expressive speech or conduct is protected by the United States Constitution" and such general knowledge "would be sufficient to dispel any possible chilling effect").

[114] *See Winsness v. Yocom*, 433 F.3d 727, 736 (10th Cir. 2006) ("In this case, Mr. Blaylock has foresworn any intention to bring criminal charges against indivdiuals who alter the flag for expressive purposes. His superior, Mr. Yocom, has gone further, categorically announcing that his office will bring no prosecutions under the statute."); *Lawson v. Hill*, 368 F.3d 955, 956-57 (7th Cir. 2004) ("At some point [the prosecutor] learned about the demonstrations and told both the police chief of Goshen, and the county's sheriff, not to investigate whether the students had violated the flag-desecration statute. We do not know when anyone was last prosecuted under the statute. We know only that [the prosecutor] has never prosecuted anyone under it and is unaware of any prosecutions in other counties.").

certain applications of the flag-destruction statute are so obviously unconstitutional that prosecutors will steer clear of them, and because of that, the actual unconstitutional applications of the statute will not be substantial in relation to the statute's legitimate sweep. The State also suggests that there will be no chilling effect from these unconstitutional applications because the public understands that the courts will not enforce them. The State's argument is somewhat like an argument advanced in a capital murder appeal a decade ago. The defense argued that the court should find the evidence to be insufficient to show future dangerousness because the defendant was so obviously dangerous that the prison authorities would place him in lockdown to prevent him from hurting anyone.[115] Although we found that defendant's argument to be "ingenious," we rejected it because "it would stand the capital punishment scheme on its head, giving relief to the most dangerous offenders."[116] Likewise, the State's argument would seem to stand First Amendment jurisprudence on its head, upholding a statute on the basis that its unconstitutional applications are so glaringly obvious that prosecutors will avoid them and speech will not be chilled by them.

Moreover, the Supreme Court has clearly stated that it will not uphold a statute "merely because the Government promised to use it responsibly."[117] "The First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*."[118] And so long as a statute remains on the books, the threat of "irresponsible" use remains, because a prosecutor or police officer may be insufficiently instructed on the issue, because the authorities (wrongly) perceive the

---

[115] *Masterson v. State*, 155 S.W.3d 167, 172-74 (Tex. Crim. App. 2005).

[116] *Id.* at 174.

[117] *Stevens*, 559 U.S. at 481.

[118] *Id.*

conduct to fall outside constitutional protection, or because of other reasons. The caselaw contains

post-*Eichman* examples of such occurrences with respect to flag-desecration statutes.[119] By

depending on the Supreme Court's "as-applied" jurisprudence to reduce the overbreadth of a statute,

the State shifts to a significant degree the determination of constitutional questions from the courts

to the prosecutors, the police, and the public. But we should not expect persons in those latter

positions to be the primary interpreters of the First Amendment:

> Arguably, people are always "on notice" that constitutionally protected conduct is
> exempt from prosecution, and law enforcement officials could always look to the
> First Amendment to determine when a law should not be enforced because it would
> interfere with constitutionally protected activity . . . . Because First Amendment

---

[119] *See Phelps v. Powers*, 63 F. Supp. 3d 943, 945-46, 952-57 (S.D. Iowa 2014) ("According to Petitioners [members of Westboro Baptist Church], Chief Powers told Elizabeth Phelps that the flag desecration statutes would be enforced against the picketers. As a result of Chief Powers's statement, members of the church refrained from putting the flag on the ground or hanging it from their bodies." The court found the Iowa flag-desecration statute to be unconstitutionally overbroad in violation of the First Amendment.); *Snider*, 752 F.3d at 1154 (In 2009, the defendant was arrested for flag desecration for shredding an American flag in his front yard and held in jail for approximately eight hours because both the arresting officer and the prosecutor "were unaware of the United States Supreme Court decisions in *Texas v. Johnson* and *United States v. Eichman*." Upon being informed of *Johnson* by a local reporter, the prosecutor dismissed the case.); *Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1234-35 (N.D. Okla. 2012) (In 2009, a United States flag was used by the plaintiff as a prop during a band performance, the plaintiff was arrested and imprisoned for thirteen hours until he posted bond, formal charges were never filed, and the sheriff commented in support of arrest, "I was shocked and disturbed by this that somebody would think they could get by with that . . . . People in this part of the United States are very proud of the flag and what it stands for and the men and women who have lost their lives to protect that flag. It's not an object to be stomped on or drug across the floor."); *Milligan*, 479 F. Supp. 2d at 997 (Two defendants were prosecuted in 2006 for flag desecration or disorderly conduct with respect to the flag for flying flag upside-down in protest. One defendant was found not guilty by a magistrate on the basis that the statute was unconstitutional as applied. The other defendant's case was dismissed one day before trial.); *Janssen*, 219 Wis. 2d at 367-68, 580 N.W.2d at 262 (In 1996, the defendant was prosecuted for flag desecration after he defecated on flag belonging to golf course. Trial court dismissed the prosecution, and the appellate courts affirmed.); *Bricker*, 542 Pa. at 237-38, 246-47, 666 A.2d at 258-59, 263 (In 1993, the defendant was prosecuted for flag desecration after a police officer discovered a dirty and wrinkled flag being used in a doorway inside the home. Trial court quashed the charge, and appellate court affirmed.).

doctrines are often intricate and/or amorphous, people should not be charged with notice of First Amendment jurisprudence . . . . Moreover, an attempt to charge people with notice of First Amendment caselaw would undoubtedly serve to chill free expression.[120]

Further, in explaining why it believes appellee's conduct in this case was not expressive, the State offers rationales that could readily lend themselves to the harassment of persons engaging in protected expression.[121] The State claims that there was "no element of speech" in appellee's conduct because his conduct "was random in nature." But the act of throwing down a flag in anger could easily be protected expression.[122] The State also contends that appellee's conduct was non-expressive because he threw down a flag that belonged to a different store than the one he was angry with. That conclusion depends on statements made by appellee to the police after they confronted him about his conduct in relation to the flag. If the expressive nature of a person's conduct depends upon what he later says when confronted by the police about it, then individuals who have engaged

---

[120] *Long*, 931 S.W.2d at 295 (criticizing reliance on language in an affirmative defense that made it a defense if the actor engaged in activity "in support of constitutionally . . . protected rights" because such language would require citizens and law-enforcement officials "to be First Amendment scholars"). *See also Janssen*, 219 Wis. 2d at 382 n.13, 580 N.W.2d at 268 n.13 ("[A] construction which by its very language limits a statute's application to speech and conduct that is not protected by the First Amendment is both impractical and constitutionally suspect . . . . [I]t simply exchanges overbreadth for vagueness.") (quoting in part from Laurence H. Tribe, AMERICAN CONSTITUTIONAL LAW, § 12-29, at 1031 (2d ed. 1988), internal quotation marks omitted).

[121] Although the case is before us on a facial challenge to the statute, "we can look to the prosecution before us as evidence of the real danger posed by the statute." *Thompson*, 442 S.W.3d at 350 (citing *Stevens*, 559 U.S. at 480).

[122] *See Joyce*, 454 F.2d at 980 ("When all this is added to the unexplained tearing which marred, injured, and disfigured the flag, it was reasonable to conclude that Joyce intended thereby publicly to show his disrespect and scorn for the flag and that he esteemed it to be low and worthless. That is the normal inference from an act of intentionally tearing an article. It is the conclusion that reasonable people reach countless times a day in the activities of ordinary life when they see a person rip something apart, throw part of it to the ground and tear the remainder.").

in expressive flag-damaging conduct can nevertheless be subject to arrest and detention pending an investigation regarding whether the conduct was in fact protected expression.[123] The State argues that the public clearly understands that the Constitution protects the right to damage a flag as a means of expression, but however clear that public understanding may be, the ruling sought by the State today would cloud that understanding—potentially re-introducing the very chilling effect that the State claims earlier decisions have eliminated.

## III. CONCLUSION

"The case is made difficult not because the principles of its decision are obscure but because the flag involved is our own."[124] We conclude that the Texas flag-destruction statute, by its text and in actual fact, prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep. Consequently, we hold that the Texas flag-destruction statute is facially invalid because it is unconstitutionally overbroad in violation of the First Amendment. We affirm the judgments below.

Delivered: October 7, 2015
Publish

---

[123] The Supreme Court has suggested that its concerns are amplified when First and Fourth Amendments freedoms intersect. *See Maryland v. Macon*, 472 U.S. 463, 468 (1985) ("The First Amendment imposes special constraints on searches for and seizures of presumptively protected material and requires that the Fourth Amendment be applied with 'scrupulous exactitude' in such circumstances.").

[124] *Barnette*, 319 U.S. at 641 (regulation requiring school children to salute American flag and recite pledge of allegiance violates First and Fourteenth Amendments).