

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0310-23

### Ex parte JOHN MORGAN STAFFORD, Appellant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

**KELLER, P.J., filed a concurring opinion in which RICHARDSON, NEWELL and SLAUGHTER, JJ., joined.**

The statute before us can criminalize parody and the use of pen names, and as a consequence, sweeps in an enormous amount of protected speech.

The part of the "true source" statute at issue before us says:

A person commits an offense if, with intent to injure a candidate or influence the result of an election, the person knowingly *represents* in a *campaign communication* that the communication *emanates* from a source other than its true source.[1]

The terms I have italicized are important, and they make the statute broad. "Campaign

---

[1] TEX. ELEC. CODE § 255.004(b) (emphasis added).

communication" is statutorily defined to mean "a written or oral communication relating to a campaign for nomination or election to public office or office of a political party or to a campaign on a measure."[2] So the "true source" statute applies to any communication by anyone about an election, for public office or on a political measure, that is intended to influence the election.

The remaining terms are not statutorily defined, so a dictionary must be consulted for their plain meanings,[3] but they too make the statute broad. Here, "represents" appears to mean "to present in words; describe, state, or set forth."[4] The word "emanate" means "to flow out, arise" or "to come forth; issue, as from a source."[5] So a violation of the statute can occur if the communication describes itself as flowing from a source other than its true source.

Signing with a pen name could open someone up to prosecution. A pen name, a pseudonym, a screen name, a profile name, or an avatar, can be entirely made up but it can also be an homage to a recognized fictitious character or to someone or something real, that currently exists or existed in the past.

A famous example of an homage to a real, historical person is the pen name "Publius" used in the Federalist Papers. This pen name was shared by Alexander Hamilton, James Madison, and John Jay—though most of the essays were not jointly authored—and it is generally thought to have referred to Publius Valerius Publicola, "one of the Roman aristocrats who overthrew the monarchy

---

[2] TEX. ELEC. CODE § 251.001(17).

[3] *Cont'l Heritage Ins. Co. v. State*, 683 S.W.3d 407, 411 (Tex. Crim. App. 2024) ("[I]n determining plain meaning, we may resort to standard dictionaries.")

[4] *Represent*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed. 2000) (definition 3).

[5] *Emanate*, *id.*

in 509 BC and who is credited with being instrumental in the founding of the Roman Republic."[6] The Federalist Papers were literally trying to influence an election—the one to adopt the United States Constitution.[7] In signing "Publius," three of our country's founding fathers described the documents as flowing from a source (Publius Valerius Publicola) other than its true source (Hamilton, Madison, or Jay).

A modern example of a historical-figure pen name used by a political figure was former FBI director James Comey's use, on Twitter, of the name "Reinhold Niebuhr," a well known theologian of the twentieth century. If Director Comey had said something to influence an election, he would be subject to prosecution.

Parody impersonations could also open someone up to prosecution. For example, there is a user account named "God" on Facebook. If the "God" account were to make statements designed to influence an election, then the account would be describing a source of the communication—God—who is not the true source of the communication. Parody impersonations have also appeared on Twitter (now X), such as "MittRmoney," which parodied Mitt Romney, and "ThePresObama," which parodied President Barack Obama.

And a parody attribution in a communication could also give rise to criminal liability. Actors on Saturday Night Live frequently impersonate political figures of the day, and satirical news

---

[6] https://guides.loc.gov/federalist-essays-in-historic-newspapers/authors

[7] The United States Constitution provided that conventions in the states, not the legislatures, would ratify the Constitution. U.S CONST. art. VII. This would appear to qualify as an election on a "measure" under Texas law. *See* TEX. ELEC. CODE § 251.001(19) ("'Measure' means a question or proposal submitted in an election for an expression of the voters' will and includes the circulation and submission of a petition to determine whether a question or proposal is required to be submitted in an election for an expression of the voters' will.").

organizations, such as The Onion and The Babylon Bee, routinely attribute to political figures statements that were not actually made. Recently, The Onion filed an amicus brief in the Supreme Court explaining its view that "for parody to work, it has to plausibly mimic the original."[8] In part of its explanation, the brief said, "Parodists intentionally inhabit the rhetorical form of their target in order to exaggerate or implode it—and by doing so demonstrate the target's illogic or absurdity."[9] But if parody statements purporting to come from a candidate were made to make a point in order to influence an election, then that parodist would be describing statements as flowing from a source—the candidate—that is not the true source. And that would be a violation of the Texas statute.

A statutory definition of "represents" that narrowed the meaning of that term to something like "assert as fact," or that used narrower words than "represents" and "emanates," might narrow the statute to avoid serious First Amendment problems. But although a court has a duty to engage in a reasonable narrowing construction to avoid a constitutional violation, such a construction should be employed only if the statute is readily susceptible to one.[10] "We should be wary of reading into a statute a narrow meaning not supported by its language because . . . the public at large will not necessarily be on notice that the law means something other than exactly what it says."[11] A narrowing construction of the "true source" statute that interprets it to mean something significantly narrower than the public would perceive from reading the language cannot entirely eliminate the

---

[8] The Onion's brief as amicus curiae in *Novak v. City of Parma*, Supreme Court docket No. 22-293, at 3 (October 2022).

[9] *Id.*

[10] *Ex parte Perry*, 483 S.W.3d 884, 903 (Tex. Crim. App. 2016).

[11] *State v. Johnson*, 475 S.W.3d 860, 872 (Tex. Crim. App. 2015) (ellipsis inserted).

chilling effect of the language itself.  Because the legitimate use of pen names and parody could often be punished under the statutory language, we must invalidate it to avoid a chilling effect on free expression.

Filed: September 4, 2024

Publish